**LVI Environmental Services Inc.
v. Duane Morris LLP**

458

*Brett A. Datto,* for plaintiff.

*Nicholas M. Centrella* and *Jennifer K. Welsh,* for defendant.

SHEPPARD, *J.,* May 10, 2010—Plaintiff LVI Environmental Services Inc. (LVI) brought this action against its former attorneys, defendant Duane Morris LLP (DM), alleging professional malpractice in connection with

DM's representation of LVI in a lawsuit entitled *LVI v. Delta/B.J.D.S. Inc.* July term 2001, no. 01811 (Phila. Cty.) (the underlying action). LVI's claim for delay damages in the underlying action was dismissed by the trial court, and DM failed timely to appeal the trial court's ruling on that issue.

In this action, DM argues, correctly, that if the trial court's ruling in the underlying action would have been sustained on appeal, then LVI suffered no damages as a result of DM's malpractice. Without damages, LVI may not prevail on its claims for professional malpractice.[1] In deciding the appeal, the Superior Court would have had to determine if the trial court erred as a matter of law, not of fact.[2] Therefore, in deciding the case within this case, this court must determine, as a matter of law, if the trial court in the underlying action was wrong. The court cannot send this issue of law to the jury.[3]

The relevant facts of record in the underlying action are as follows. LVI was a sub-subcontractor on a con-

---

1."When it is alleged that an attorney has breached his professional obligations to his client, an essential element of the cause of action, whether the action be denominated in assumpsit or trespass, is proof of actual loss." *Rizzo v. Haines,* 520 Pa. 484, 504, 555 A.2d 58, 68 (1989).

2. *Liss & Marion P.C. v. Recordex Acquisition Corp.,* 630 Pa. 198, 207, 983 A.2d 652, 657 (2009) ("We may disturb a trial court order granting summary judgment only if the lower court committed an error of law.").

3. "Fundamental to our jury system is the premise that the court determines all questions of law while the jury passes on the credibility of witnesses and determines the facts." *General Electric Credit Corporation v. Aetna Casualty and Surety Company,* 437 Pa. 463, 480 n.21, 263 A.2d 448, 458 n.21 (1970).

struction project at 1500 Spring Garden Street (the project). LVI entered into a contract with Delta/B.J.D.S. Inc. (Delta) under which LVI was to perform certain demolition work on the project. Delta was the subcontractor responsible for asbestos removal on the project. The contract between Delta and LVI provided:

"If the subcontractor is delayed, disrupted or interfered with at any time in the commencement or progress of the work by an act or neglect of the contractor or of a separate subcontractor employed by the contractor, or by changes ordered in the work, or by fire, unavoidable casualties or any other cause wholly beyond the subcontractor's control, or by delay authorized by the contractor pending mediation and dispute resolution, then the agreement time shall be extended by change order for such reasonable time as the contractor may determine. No claim for delay, disruption or interference shall be allowed unless it increases the overall critical path duration of the schedule in effect at the time of the delay and unless the subcontractor has used its best efforts to offset such delay or disruption by making appropriate changes to other parts of the schedule. The subcontractor shall not be entitled under any circumstance to any adjustment in compensation or any damages or other compensation whatsoever in the event of any delay, disruption or interference in the progress of the work, regardless of the cause(s), unless owner agrees to such compensation in writing and contractor[4] is not at fault, in whole or in part, for such delay, disruption or interference."[5]

---

4. Given the context, this should probably read "subcontractor."
5. Contract, ¶15.10 ("No damages for delay clause").

By including this provision in their contract, the parties agreed that more time, rather than more money, was their preferred remedy for the delays which so often occur in construction projects.

As part of their contract, LVI and Delta agreed upon a schedule for the performance of their work under which LVI would have exclusive access to each floor to do its work before or after Delta performed its asbestos abatement work.[6] The work did not proceed as planned. LVI claims that Delta fell behind schedule, and LVI was not given the exclusive access to which the parties agreed. As a result, LVI was forced to complete its work in a less efficient and more expensive manner.

In April 2001, LVI hired DM, who filed the underlying action on LVI's behalf against Delta. In the underlying action, LVI asserted claims against Delta for breach of contract and violation of the Contractor and Subcontractor Payment Act. Delta moved for summary judgment based on the no damages for delay clause in the contract. The trial judge granted Delta's motion and dismissed LVI's delay damages claims.[7] The parties settled the remaining claims and cross claims.

DM filed a notice of appeal of the dismissal of LVI's approximately $1,700,000 in delay damages. The trial

---

6. Contract, exhibit B (scope of work). The scope of work also contained an acknowledgement by LVI that:

"The subcontractor may have to work overtime to properly complete a work program, or maintain job schedule requirements and therefore the costs (labor, etc.) will be the responsibility of the subcontractor and are included in the subcontract agreement."

7. The procedural history of LVI's motion for summary judgment is far more complicated than this simple statement implies. For purposes of this opinion, the end result is all that is important.

462

judge requested a statement of issues upon which the appeal was based. DM neglected timely to serve the statement of issues on the trial judge. As a result, LVI's appeal was quashed.

LVI filed this action against DM for legal malpractice. LVI's expert in this action opines that the trial court's dismissal of LVI's delay damage claim in the underlying action would have been reversed on appeal but for DM's malpractice in failing to serve the statement of issues on the trial judge.[8] LVI's expert claims that the facts of this case fit the exceptions to enforcement of no damages for delay clauses.

A no damages for delay clause will not be enforced, *i.e.,* delay damages may be recovered, where the delay "was not in the class of difficulties and delays which were in the minds of the parties" when they entered into their contract.[9] The type of facts that give rise to this exception are akin to those that give rise to a claim for fraud in the inducement[10] or mutual mistake of fact.[11] Under all three legal theories, courts will not enforce a contract, or the relevant provisions of a contract, where the material facts underlying the transaction are not as the parties believed them to be at the time of contract-

8. Opinion of Howard Kelin, Esq., p. 23.

9. *Sheehan v. Pittsburg,* 213 Pa. 133, 62 A. 642 (1905).

10. See Restatement (Second) of Contracts, §159, comment c ("An assertion must relate to something that is a fact at the time the assertion is made in order to be a misrepresentation.").

11. See Restatement (Second) of Contracts, §152. "A contract made under a mutual mistake as to an essential fact which formed the inducement to it, may be rescinded on discovery of the mistake . . . ." *Gocek v. Gocek,* 417 Pa. Super. 406, 410, 612 A.2d 1004, 1006 (1992).

ing.[12] There is no claim in this case that the circumstances existing at the time LVI and Delta entered into the contract were not as LVI believed them to be. Instead, LVI's claim is that Delta's promised future performance did not occur in the orderly fashion that LVI anticipated.

A no damages for delay clause may also be avoided "where an owner by an unwarranted positive act interferes with the execution of the contract, or where the owner unreasonably neglects to perform an essential element of the work in furtherance thereof, to the detriment of the contractor.[13] Delay occasioned by the work of other contractors on the job site is not usually sufficient to meet this standard.[14]

On one occasion, the Pennsylvania Supreme Court found that the interference of other contractors was such an impediment to the complaining contractor's work that delay damages were recoverable despite the no damages for delay clause in the parties' contract.[15] However, the

---

12. See *Coatesville Contractors & Engineers Inc. v. Borough of Ridley Park,* 509 Pa. 553, 506 A.2d 862 (1986) (delay damages recoverable despite contract provision to the contrary where contractor agreed to excavate a drained lake and was instead confronted with one full of water); *Sheehan,* 213 Pa. 133, 62 A. 642 (delay damages recoverable despite contract provision to the contrary where owner did not have right of way over street it hired contractor to construct.).

13. *Henry Shenk Co. v. Erie County,* 319 Pa. 100, 106, 178 A. 662, 665 (1935).

14. See *id.* General contractor's failure to provide subcontractor with promised expressway ramps free of traffic and contiguous staging areas might be sufficient to meet this standard. *Grimme Combustion Inc. v. Mergentime Corporation,* 406 Pa. Super. 620, 595 A.2d 77 (1991) (motion for judgment on the pleadings denied).

15. *Gasparini Excavating Company v. Pennsylvania Turnpike Commission,* 409 Pa. 465, 187 A.2d 157 (1963).

holding of that case must be limited to the rather troubling facts upon which it was based. In that case, it appears the interfering contractors and the owner of the project fraudulently conspired to misuse the project's funds, which delayed the project and the complaining contractor. [16]

There is no evidence that any such grand criminal conspiracy existed with respect to the project at issue in the underlying action. Instead, the evidence showed that Delta fell behind schedule in its own work and attempted to make up the lost time by working concurrently with its subcontractor, LVI, to LVI's apparent detriment. If this court were to find that such a common construction scenario justified ignoring the no damages for delay clause in the contract, the exception to enforcement of the clause would end up swallowing the rule, and all such clauses would be rendered meaningless.

The trial court in the underlying action correctly ruled that the no damages for delay clause was enforceable and barred LVI's claim against Delta for delay damages. The trial court's ruling would have been upheld on appeal

---

16. *Id.*, 409 Pa. at 478, 187 A.2d at 163. The Supreme Court was so displeased by these events that it vacated an arbitration award applying the no damages for delay clause. *Id.*, 409 Pa. at 479, 187 A.2d at 164. Pennsylvania courts will not usually disturb an arbitrators' award for such a "mistake of law." See *Runewicz v. Keystone Insurance Company*, 476 Pa. 456, 461, 383 A.2d 189, 192 (1978) ("A common-law arbitration award is not reviewable on the basis of error of law or fact by the arbitrators. The setting aside of an award is proper only on a showing of denial of a hearing or fraud, misconduct, corruption, or similar irregularity leading to an unjust, inequitable, or unconscionable award."); 42 Pa.C.S. §7314, §7341.

as a matter of law. Therefore, LVI has suffered no damages as a result of DM's malpractice in connection with the appeal.

## CONCLUSION

For all the foregoing reasons, DM's motion for summary judgment is granted, and LVI's claims against DM for malpractice are dismissed.

## ORDER

And now, May 10, 2010, upon reconsideration of defendant Duane Morris LLP's motion for summary judgment, the responses in opposition, the briefs in support and opposition, all other matters of record, and in accord with the opinion issued simultaneously, it is ordered that the motion is granted, and all of plaintiff's claims are dismissed.